CITY OF CLIFTON, A MUNICIPAL CORPORATION, APPEL-
LANT, v. JOHN F. LAEZZA, DIRECTOR, DIVISION OF
LOCAL GOVERNMENT SERVICES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 29, 1977—Decided April 4, 1977.

Before Judges HALPERN, ALLCORN and BOTTER.

*Mr. Arthur J. Sullivan, Jr.,* City Counsel argued the
cause for appellant.

*Ms. Andrea Kahn,* Deputy Attorney General, argued the cause for the respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

ALLCORN, J. A. D. Among the various enactments adopted by the Legislature in 1976 forming the so-called income tax package was chapter 68 (*N. J. S. A.* 40A:4-45.1 *et seq.*). Its declared purpose was to impose maximum limitations (a "cap") upon municipal and county spending.[1] As amended by *L.* 1977, *c.* 10, it does so by prohibiting such public agencies (other than municipalities having a tax rate of "$0.10 or less per $100.00") from "increasing their final appropriations [in the years subsequent to 1976] by more than 5% over the previous year * * *." *N. J. S. A.* 40A:4-45.1 *et seq.*

Certain specified exceptions to the 5% cap are permitted, among them being appropriations for debt service, expenditures mandated by law after the effective date of the cap law and, in the case of municipalities, additional expenditures "when approved by referendum." *N. J. S. A.* 40A: 4-45.3, 45.4. Another specific exception from the maximum 5% permitted increase over the preceding year's appropriations is founded upon the increase in municipal assessments attributable to "new construction or improvements" made during the preceding year. *N. J. S. A.* 40A:4-45.3(a), 45.4(a).

The controversy here concerns the interpretation of the subsection of the statute setting forth the "new construction" exception for municipalities and governing the computation thereof. That subsection excepts from the maximum to be appropriated by the municipality

---

[1] Limitations on increases in the budgets of school districts are contained in *N. J. S. A.* 18A:7A-25, as amended by *L.* 1976, *c.* 135.

The amount of revenue generated by the increase in its valuations based solely on applying the preceding year's general tax rate of the municipality to the assessed value of new construction or improvements. [*N. J. S. A.* 40A:4–45.3(a)]

The critical issue is the meaning of the clause "general tax rate of the municipality". The Director of the Division of Local Government Services construes the language to mean the tax rate fixed for local municipal purposes and therefore concludes that the amount to be so excepted must be calculated by multiplying said rate by the total of the assessed value of the new construction or improvements made during the preceding year. The city, on the other hand, asserts that the clause means the aggregate tax rate of the municipality — *i. e.,* the total of the tax rate fixed for local municipal purposes, plus the tax rates fixed for local school purposes and for county purposes. Inasmuch as the 1976 tax rate for local municipal purposes in Clifton was fixed at 75¢ per $100 of assessed value, the aggregate of the three tax rates (local, school and county) was fixed at $3 per $100 of assessed value and the assessed value of the 1976 new construction and improvements amounted to more than $11,000,000, the use of the aggregate rate would enable the city to appropriate approximately $250,000 more than it otherwise would by using the rate fixed for local municipal purposes only.

There is little doubt that the questioned language of the subsection is ambiguous — particularly so when compared with § 2 of the statute which, in referring to the tax rate fixed for local municipal purposes, uses the language "a municipal purposes tax levy," *N. J. S. A.* 40A:4–45.2. Nonetheless, when we consider the basic purpose and policy of the act, the design and method devised by the Legislature to accomplish that purpose and policy, and the context in which the questioned clause appears, there can be no doubt whatever of the correctness of the Director's interpretation that the tax rate to be utilized in computing the new construction and improvements exception is the tax rate fixed for

local municipal purposes only, and not the aggregate of the local municipal rate, the school rate and the county rate.

The plain object of this exception is to enable the municipality to appropriate and use in the current year the additional revenues that will be generated by new construction and improvements made the preceding year which, of course, would not have been reflected in either the appropriations or the tax rate for the preceding year. By restricting the additional monies to be anticipated from such source to an amount equal to the product of the total assessed valuation of the new construction and improvements times the tax rate fixed for local municipal purposes for the preceding year, the subsection thereby makes available for appropriation by the municipality for the current year an additional sum which the municipality is entitled to include in its anticipated revenues for the current year, and which thus increases *pro tanto* the total amount that it may appropriate for the current year. If the assessed value of the new construction and improvements be multiplied by the aggregate of the school, county and local tax rates, the result would bear no reasonable relation to the amount appropriated the preceding year solely for local municipal purposes and, instead of enforcing the purpose and policy of the act, would grant a "windfall" to the municipality in that it could resort to the tax rates attributable to monies levied and used solely for school purposes and solely for county purposes which, in this context, bear no relation whatever to municipal receipts or expenditures for local purposes. This construction is buttressed by the fact that the act similarly fixes a 5% maximum for county budgets, and excepts therefrom the "amount of revenue generated by the increase in valuations within the county based solely on applying the preceding year's county tax rate to the apportionment valuation of new construction or improvements within the county and such increase shall be levied in direct proportion to said valuation", *N. J. S. A.* 40A:4-45.4(a). Logically, there is no sound or reasonable basis for treating the counties and municipalities differ-

ently in the case of increases in assessed valuations attributable to new construction or improvements made the preceding year. Moreover, if the aggregate rate were used by the municipality, the taxpayers would be subject to an increase attributable to the county rate twice — once by the county for its budget and once again by the municipality for its budget. Such an incongruous result never could have been envisioned or intended by the Legislature.

The city asserts that the phrase "general tax rate" of the municipality in *N. J. S. A.* 40A:4–45.3(a) is a term of established meaning which is also found in *N. J. S. A.* 54:4–52, pursuant to which the table of aggregates is prepared by county tax boards, where that phrase signifies the aggregate tax rate for local taxing purposes to raise funds for school, county and municipal needs. The two statutes, however, do not have the same object or purpose. The meaning of the cited clause in *N. J. S. A.* 54:4–52 has neither controlling nor even persuasive effect in construing the clause contained in *N. J. S. A.* 40A:4–45.3(a). The latter must be construed in the light and context of the language and purpose of the cap statute, *State v. DiCarlo,* 67 *N. J.* 321, 325 (1975).

It is further contended by the city that unless it is authorized to include in its 1977 budget the additional $250,000 which would be available to it were the aggregate of the school, county and local municipal tax rates used in computing the exception attributable to the assessed valuation of new construction and improvements constructed in 1976, the city might well lose "up to one third of the members of its Police and Fire departments for at least a portion of 1977 by reason of a lack of appropriations to meet payroll." The city does not undertake to explain its reasons for choosing its fire and police salaries as the single area for closing the gap, and it fails to note that the statute permits appropriations beyond the 5% limitation whenever approved by its citizens "by referendum." *N. J. S. A.* 40A:4–45.3(i). Furthermore, the city has a compelling obligation to live within its means — as has been recently so vividly demonstrated by

the predicament in which New York City found itself after neglecting to observe this fundamental precept.

Accordingly, the determination of the Director of the Division of Local Government Services disapproving the 1977 budget of the City of Clifton is affirmed.